17954

APPLIANCE BUYERS CREDIT CORPORATION, Appellant, v. Harold H. BAXLEY, Baxley-Faile, Inc., Baxley-Lane, Inc., Baxley's Appliance Center, Inc., and Baxley-Marshall, Inc., Respondents.

(127 S. E. (2d) 8)

*Messrs. Law, Kirkland & Aaron,* and *Theodore W. Law, Jr..* of Columbia, *for Appellants;*

*Messrs. Murchison, West & Marshall* and *Jack L. Marshall, for Respondents,*

August 20, 1962.

TAYLOR, Chief Justice.

This is an action for alleged breach of contract. The complaint sets forth certain acts of defendants which allegedly constitute a violation of the terms of a contract existing between plaintiff and defendants and asks for an Order restraining defendants from making collections, repossessions or disposing of repossessed property acquired by virtue of conditional sales contracts which had been purchased by plaintiff from defendants and prays for an accounting.

A temporary restraining order, together with a rule to show cause why the said Order should not be made per-

manent, was issued and hearing held before His Honor Judge William L. Rhodes, who continued the temporary restraining order in force and effect until a hearing on the merits could be had and required bond from plaintiff in order to indemnify defendants should they be found to have suffered damages as a result thereof.

Defendants filed answer and counterclaim, and plaintiff interposed a demurrer to the counterclaim.

A hearing was held thereon before His Honor Judge John Grimball, Resident Judge of the fifth Judicial Circuit, who issued his Order overruling the demurrer; and it is from this Order that plaintiff appeals.

The complaint alleges on information and belief that defendants have not complied with certain provisions of the contract with respect to remitting collections and making proper accounting for repossessions and seeks an accounting, a money judgment and other equitable relief.

Defendants duly filed answer and counterclaim, Paragraphs 9, 10, and 11 of which state:

"9. That in addition thereto, the plaintiff has written to numerous customers of the defendants a form letter, a copy of which is hereto attached and made a part of this answer and counterclaim.

"10. That by the terms of the said letter, the financial honesty and integrity of these defendants is questioned and the said document and inferences to be drawn therefrom constitute libel as to these defendants which have caused them serious financial loss and damage.

"11. That by reason of the conduct of the plaintiff these defendants have suffered damages in the sum of Fifty Thousand ($50,000.00) Dollars."

To the foregoing, plaintiff demurred upon the grounds that "they do not state facts sufficient to constitute a cause of action, in that the publication set forth as a basis for said libel is not libelous."

The agreement entered into between the parties provided among other things that defendants would sell agreements, chattels mortgages, notes, etc., and such accounts as were agreeable between the parties to plaintiff at a price agreeable between the parties. A pertinent portion of this agreement appear as Paragraph 9 in the Basic Application and Agreement and reads as follows:

"9. You shall have the sole right to make collections on all Accounts, and we agree not to solicit or make any collections or repossessions with respect to any Accounts sold to you, nor to accept the return of nor make any substitutions of any Equipment covered thereby except with your instructions. We agree to forward to you promptly all communications and remittances we receive in reference to said Accounts. So long as any amounts owing on such Accounts by us or any Buyer shall be due and unpaid, or in the event of any breach of this agrement by us any money, Accounts or property of ours which may come into your possession, may be held and later applied by you to any amounts so owing or which later become due, it being understood that such Accounts or property of ours which you may hold, may be converted into cash by you, the cost of converting same to cash deducted therefrom and the remaining cash applied as aforesaid. In the event of any breach of this agreement by us, or of our ceasing to continue our present business, we agree to purchase from you upon demand, all Accounts purchased by you from us, for the amount then remaining unpaid on said Accounts."

The alleged libel complained of was in the form of a letter by plaintiff to a customer or customers of the defendants, which reads as follows:
"Carrie Kirkland
"Route 2
"Kershaw, S. C.
"Dear Customer:
"Effective immediately you are requested, in accordance with your contract to make all future payments on your ac-

count direct to Appliance Buyers Credit Corporation by mail or in person at the address shown on your coupon book, or to an authorized employee of Appliance Buyers Credit Corporation.

"We cannot be responsible for any future payments not made in accordance with the above instructions.

"Under no circumstances should the equipment be released to any individual who is not an employee of Appliance Buyers Credit Corporation without written authorization addressed to you.

"Please indicate below that your records do or do not agree. A postage paid envelope is enclosed for your convenience.

"Very truly yours,
"s/P. E. Watson
"Manager"

"To: Appliance Buyers Credit Corporation Acct. No. 11810-01-503 Receipt is hereby acknowledged of your notice date 2-27-61 requesting that payments on the account referred to above be made direct to you. According to ABCC's records the balance of my account was $207.00 on 2-27-61. I agree with ABCC's records.

---

Please answer 'Yes' or 'No'

. . . . . . . . . . . . . . . . . . . . . .
(Please sign here)

"If answer is 'no', please give the following information: I have . . . . . . . . . . . . . payments of $. . . . . . . . each left (No. of pmts.)

to make. I made my latest payment of $ . . . . . . on . . . . . . to . . . . . . . . ."

"The demurrers admit the facts alleged in the complaint, but do not admit the inferences drawn by plaintiffs from such facts, and it is for the court to determine as to whether or not such inferences are justifiable; that is, to determine if the language used in the publication can fairly or reasonably be construed to have the meaning attributed to it by the plaintiff." *Oliveros v. Henderson,* 116

S. C. 77, 106 S. E. 855; *Drakeford v. Dixie Home Stores,* 233 S. C. 519, 105 S. E. (2d) 711.

"When the language alleged to be libelous, or slanderous, is plain and unambiguous, and admits of but one reasonable construction, it becomes a matter of law for the action and determination of the court. If said language be ambiguous, or doubtful of meaning, it should be left to the jury to determine in what sense it was used, and what its meaning is." *Jackson v. Record Publishing Co.,* 175 S. C. 211, 178 S. E. 833.

"A counter-claim being a cross-action, in effect, it would seem that the defendant should be required to state the facts that enter in to make up such cross-action; and, if he neglects to do so, it is in the power of the plaintiff to test its sufficiency by demurrer on that ground. * * *" *Kauffman Milling Co. v. Stuckey,* 37 S. C. 7, 16 S. E. 192.

Under the contract entered into between the parties, which is a part of the record here, plaintiff was given the sole right to make collections on all accounts and the defendants agreed not to solicit or make any collection or repossession with respect to any accounts sold to plaintiff. Therefore, it was within the prerogative of plaintiff under the provisions of the contract to request that all future payments on accounts be made to it rather than defendants and to request of the purchaser that the equipment not be released to anyone other than plaintiff or its employees. Plaintiff was also within its rights in making inquiry as to whether the balance due on the account according to their records was correct as Paragraph 3 of such contract provides that plaintiff "may at any time inspect our records in order to ascertain our financial condition, or at your option we will furnish you with a copy of an independent audit report. We also agree to furnish you financial statements at the end of each calendar quarter, or immediately in event of an unfavorable change in our financial condition." And Para-

graph 6 provides: "In the event of default by the Buyer in the payment of any two installments of an account or in the performance of any requirement imposed on the Buyer therein, we shall repurchase said account from you for cash, on demand, for an amount equal to the unpaid balance on said Account less such proper portion of your purchase charge as you may determine. * * * *"

The letters did nothing more than to make inquiry into the status of the account, to request that all future payments be made to plaintiffs, and to advise the purchaser that the right to the repossession in case of nonpayments on the appliance in question lay in plaintiff.

The acts complained of having been authorized by contract between the parties and there being no allegation or showing in this record that plaintiff was actuated by ill will or malice in writing the letter complained of to the customers whose accounts they had purchased or that the circumstances were such as tended to show a malicious intent to injure defendant, the demurrer should be sustained, *Costas v. Florence Printing Co.,* 237 S. C. 655, 118 S. E. (2d) 696; *Norton v. Great Atlantic & Pacific Tea Company,* 184 S. C. 525, 193 S. E. 126; *Hubbard v. Furman University,* 76 S. C. 510, 57 S. E. 478; *Spigner v. Provident Life and Accident Insurance Co.,* 148 S. C. 249, 146 S. E. 8; *Prickett v. Western Union Telegraph Co.,* 134 S. C. 276, 132 S. E. 587.

For the foregoing reasons we are of opinion that the Order appealed from must be reversed and the demurrer sustained, and IT IS SO ORDERED.

Reversed.

Moss, Lewis, Bussey and Brailsford, JJ., concur.