13784

GALLOWAY v. COX

(172 S. E., 761)

Before SHARKEY, J., County Court, Florence, December, 1932. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

*Mr. William H. Smith,* for appellant, ▓▓▓▓▓▓▓▓▓

*Messrs. W. Marshall Bridges* and *W. Stokes Houck,* for respondent, ▓▓▓▓▓

February 16, 1934.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

The plaintiff brings this action to recover damages of the defendant for the use by the latter of alleged slanderous language to and of the plaintiff. The allegations of the complaint, stated briefly, are: That plaintiff rented of the defendant certain premises in which he established a wood-yard; that in the wood business he took as a partner one Russell Green; that on a date named defendant demanded of plaintiff the sum of $2.50, the amount of the rent for two weeks, which was not then due, and plaintiff did not have the money with which to pay it, and so informed defendant, who in a rude and insolent manner said to plaintiff, in the presence of Green and two white boys: "Galloway, I have found you dishonest. I have found you out and that is enough for me."

Defendant demurred to the complaint for that it did not state a cause of action, since: (a) "The words alleged to

have been used by defendant do not impute to plaintiff the commission of any criminal offense, and (b) the language alleged to have been used contains no allegation of any special damages suffered by plaintiff on account of said language."

The Judge of the Civil Court of Florence County, in which Court the action was brought, in an order dated July 27, 1933, held: "It is my judgment that the complaint does state a cause of action, and that the words alleged to have been spoken by defendant concerning the plaintiff are actionable *per se*. I do not think, however, that the words alleged to have been spoken by the defendant concerning the plaintiff, impute to the plaintiff the commission of any criminal offense."

Notice was given of intention to appeal from this order. Before the expiration of the time for perfecting the appeal, the attorneys of record, representing the defendant, withdrew from the case, and the attorney now of record was substituted.

Upon proper notice to plaintiff's attorneys, defendant's attorney moved before the Judge of the Civil Court for an order vacating and modifying the order of July 27. His Honor, in an order overruling the motion, said: "I held that the alleged defamatory words, set forth in the complaint, did not impute to the plaintiff the commission of any criminal offense, and that they were therefore not, for that reason, actionable, *per se*. The demurrer, however, was overruled for the reason that, in my opinion, the words alleged to have been spoken by the defendant, concerning plaintiff, were actionable *per se* for the reason that they tended to injure him in his business. The question, therefore, of whether the alleged words were actionable *per se* on the last mentioned ground is the only question which arises under the present motion. It is true that the question involved is a very close one, but it seems to me that the words set forth in the complaint, alleged to have been spoken by

the defendant of the plaintiff, relate to the plaintiff's business and impute to him a charge of delinquency in the conduct of said business. It would necessarily follow that such charge would have the effect of injuring plaintiff in the carrying on of his business and that they are therefore actionable *per se.*"

From this order this appeal comes, based on four exceptions, all of which will be considered and embraced in the judgment of the Court, but they will not be considered separately.

The law relating to libel and slander is well known and established, but there has ever seemed to be a difficulty in its application; therefore, the many cases with which the books are filled, appear to have been decided each upon its special facts; it is difficult, therefore, to measure the facts of this case by those of decided cases. Each case must stand on its own bottom.

"In determining on the actionable nature of words Courts are very likely, unless controlled by precedent, to decide in accordance with the general and fixed opinion of the particular locality as to the damaging effect of the charge contained in the words. Hence, the decisions are apt to vary with the moral and social conditions and views of different communities." 17 R. C. L., 264, 265.

In Black's Law Dictionary (3d Ed.), page 1104, is given an especially clear definition of "libel and of slander," and a statement of the distinction between them in the requisites of allegation and proof: "If a written or printed publication tends to degrade a person, that is, to reduce his character or reputation in the estimation of his friends or acquaintances, or the public, or to disgrace him, or to render him odious, contemptible or ridiculous, it is "libelous *per se'*, though spoken words are 'slanderous *per se'* only *if they falsely impute the commission of a crime involving moral turpitude, an infectious disease, or unfitness to perform duties of an office or employment, prejudice him in his profession or trade, or tend to disinherit him.* (Italics added.)

The following statement of the law is taken from 17 R. C. L., 290: "In determining whether or not a charge of dishonesty is actionable much appears to depend on whether the accusation is in writing or is merely oral. Thus, to accuse a person orally of cheating or of being a cheat is not actionable unless special damage is shown or the charge is made of person in connection with his occupation, or with reference to his method of carrying on business, but if the words used are written or published they are libelous *per se*. So, in general, there are many authorities holding charges of dishonesty in various forms libelous, when such charges are written or printed, even when the words used merely intimate a suspicion of dishonesty. On the other hand, an oral charge of gross dishonesty, for which if true, one would be liable civilly, but not criminally, has been held not actionable *per se*."

"The reasons given to explain this distinction are that written or printed slander is much more extensively and permanently injurious to character than verbal, being more widely circulated; that it is, therefore, more aggravated and dangerous as tending to breaches of the peace; and that the deliberation necessary to prepare and circulate a written slander evinces greater malice in the slanderer, and is worthy of stricter punishment." 17 R. C. L., 264.

In the present case the trial Judge holds that the words: "I have found you are dishonest. I have found you out and that is enough for me," are "actionable *per se*" because they tend to injure plaintiff in his business. He does not hold that they are "slanderous *per se*." Doubtless he means to hold that the colloquium, the innuendo contained in the allegations of the complaint, tends to show that the language complained of in the complaint will injure plaintiff in his business; thus tending to prove special damages.

It is the rule that where words themselves do not charge an actionable slander, if the facts are pleaded, which, coupled with the words alleged, show the intent to charge an action-

able offense, the action will lie. The converse of that proposition is true; and, therefore, it is necessary to inquire whether the plaintiff in his complaint has met that requirement.

It is true that he alleges that by the language set out the defendant meant to charge him with being so dishonest that he would not pay his honest debts, and that he was so dishonest that he would not properly handle the money received by him for the partnership existing between him and Green, and that he would steal and embezzle the funds entrusted to him by Green. These are assertions or allegations. Are they mere conclusions of plaintiff, or are there any facts stated from which they may fairly and reasonably be inferred to be true?

In passing upon a demurrer in such case, it is the province of the Court to determine whether the language used complies with the rule of pleading above stated.

"The demurrers admit the facts alleged in the complaint, but do not admit the inferences drawn by plaintiffs from such facts, and it is for the Court to determine as to whether or not such inferences are justifiable; that is, to determine if the language used in the publication can fairly or reasonably be construed to have the meaning attributed to it by the plaintiff." *Oliveros v. Henderson,* 116 S. C., 77, 106 S. E., 855, 857.

"The inference of hurt arising out of a statement of facts in order to become actionable, must be such an inference as is established by the general consent of men, and the inference must be judged of by the Court in the first instance." *McGregor v. State Co.,* 114 S. C., 48, 103 S. E., 84, 85.

"The further allegation of the complaint is that the publication was 'libelous'; but so much is the statement of a legal conclusion, and not of a fact." *McGregor v. State Co., supra,* quoting *Mayrant v. Richardson,* I Nott & McC., 351, 9 Am. Dec., 707.

It is axiomatic that the alleged slanderous words are to be taken and construed altogether and in their common and accepted meaning.

It is alleged that the defendant said to the plaintiff: "I have found you dishonest. I have found you out and that is enough for me." The trial Judge holds that this language was used in relation to plaintiff's business and necessarily tended to injure it. The averments of the complaint are to the effect that the alleged slanderous language was used of and concerning the plaintiff by the defendant because the former failed to pay the latter certain rent claimed to be due. It is clear, in these circumstances, that the construction, by way of innuendo, placed upon such language by the plaintiff, that it charged him with a crime and was therefore actionable *per se,* cannot be sustained. In other words, the objectionable statement does not bear, in the connection in which it was made, the construction that the plaintiff was guilty of larceny, or of any other indictable offense.

"It is true the complaint alleges that the publication tended to impeach the reputation of the plaintiff and to injure his business, but that bald allegation does not make the publication actionable, else a confessedly harmless act may be converted into a harmful act by a mere allegation." *McGregor v. State Co., supra.*

"The allegation in the petition that the defendant 'did publish' seems only to be a conclusion of the pleader and must yield to the pleaded facts." *McCravy v. Schneer's* (Ga. App.) 171 S. E., 391.

The complaint must state facts which show, if proven to be true, that they will injure the plaintiff in his business. That is the ground upon which the order of the trial Court holds that the complaint states a cause of action. Then, it follows, necessarily, the words must relate to plaintiff's business as the keeper of a woodyard.

"The rule is that in order to render language concerning one in a specific character or relation actionable it must touch him in that specific character or relation; that is, the words must have such a close reference to such relation or character that it can be said that they are defamatory by means of an imputation upon one in that character distinctly from and independently of being an imputation upon him as an individual." 36 C. J., 1182.

The entirely logical deduction from the allegations of the complaint is that defendant went to the woodyard to collect his rent, and failing to get it told plaintiff that he was dishonest and that he had found him out. The language applied to the plaintiff individually, and there is not the slightest ground pleaded for the bald statement that it was intended to apply to plaintiff in his woodyard business and in his dealings with his partner. As the late Mr. Justice Gage said in a case of similar nature [*McGregor v. State Co.,* 114 S. C., 48, 103 S. E., 84]: "So much is mere conclusion."

The case of *McCravy v. Schneer's, supra,* was an action for damages for libel founded upon a letter to plaintiff demanding payment of a debt and reminding plaintiff that defendant still held title to the merchandise sold to him by defendant, and that as plaintiff had ignored defendant's letters, defendant's further action would be regulated by plaintiff's conduct. Apparently the innuendo pleaded was that defendant intended to charge plaintiff with dishonesty in disposing of the merchandise without paying for it. A demurrer was sustained on circuit and affirmed on appeal. The Supreme Court of Georgia said: "This Court is aware of the fact that when Oglethorpe founded Georgia he had in mind the caring for those who had been confined in debtor's prisons. This fact, however, has not made it libelous in Georgia for a creditor to write a letter to his debtor asking that his debt be paid. A creditor still has the right to ask his debtor to pay what he owes without being subject to an action for libel."

The same rule prevails in South Carolina.

The judgment of the Court is that the order appealed from is reversed, and that the complaint be dismissed.

MR. CHIEF JUSTICE BLEASE, MESSRS. JUSTICES STABLER and CARTER, and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.